HARRIS <em>et al.</em> v. STONE.

1. NOTICE TO PURCHASER. The purchaser of real estate, with notice of the existence of an equity therein in a third party, takes the property subject to such equity.

2. LEGAL TITLE: PRESUMPTIONS. The holder of the legal title to real estate is *prima facie* the owner thereof, and the burden of showing that it is held in trust is upon the party who alleges that it is so held.

*Appeal from Pottawattamie District Court.*

TUESDAY, DECEMBER 8.

THE facts are stated in the opinion.

*S. Clinton* for the appellant.

*R. L. Douglass* for the appellees.

WRIGHT, J.—In equity, to determine the title to lot 192, in the city of Council Bluffs. Prior to February 12th, 1853, this lot was occupied and owned by one John McClure, under a "claim title." On that day he parted with his possessory interest, making the deed to one Eubank. Complainants claim under this and successive conveyances in regular order, which vested the title in their ancestor George W. Harris, all the transfers being made prior to the entry of the land by the County Judge under the act of Congress of April 6th, 1854, for a reference to which and the act of the General Assembly, see 8 Iowa, 322; *Hall* v. *Doran*, 6 Id., 433; 11 Id., 368; *Hall* v. *McMahan*, 4 G. Greene, 376; *Graves* v. *Steele*, Id., 377.

On the part of respondents it is admitted, that McClure was, at the time of this sale and transfer by him, the rightful occupant and owner, and that he made the deed to Eubank. But it is claimed, that the purchase money was paid by Franklin Hall, and the title taken in the name of Eubank in trust for said Hall; that Hall took the possession by himself and a tenant; that those claiming under him had and held such possession, except when ousted by the fraud and violence of complainants; that complainants and those under whom they claim had knowledge of Hall's equity, and of the true condition of the title. Franklin Hall conveyed to Elkanah Hall, who conveyed to McMechon and McConnell, who, in 1854, filed their bill in equity against F. Street as County Judge, who had entered the land and laid the same off into lots, under the said act of Congress, to compel him to convey this lot to them. Geo. W. Harris, the ancestor of complainants, then held the adverse possessory title under Eubank, but was not made a party. No defense was made by the County Judge, and McMechon and McConnell obtained a decree according to the prayer of their bill. The County Judge complied with this decree, pursuant to the written order and direction of the com-

plainants therein, by deeding the property to the respondent Street. Harris was advised by the County Judge, verbally, of the pendency of the proceeding, and requested to come in and be made a party. Judge Street filed a motion duly verified, asking to make the said Harris a party defendant, which was resisted by certain attorneys who represented themselves as acting for the parties interested in this and other property included in the same controversy. The motion was overruled, and as he, (according to his expressed intention in open Court,) made no defense, an order was entered that the deed should be made to McMechon and McConnell.

The first and material inquiry is, who purchased the lot of McClure? If the purchase was made by Hall, if his money paid for it and the title was taken in the name of Eubank in trust, this decree must be reversed and the legal title remain as we find it, for we think the testimony sufficiently shows that complainants and those from whom they derive title, had notice that Hall claimed the property; that they purchased with knowledge that there was a contest between those holding under the two titles.

In determining this question we are met with the admitted fact, that the title was made to Eubank by McClure. *Prima facie*, therefore, he was the owner, the rightful holder of the possessory title. That he held this in trust for another is not to be presumed. The burden of showing this is upon those asserting it. And, therefore, though this is a proceeding by those claiming adversely to the present legal title, yet, aside from the effect of the decree in favor of McMechon and McConnell, it is admitted that the County Judge was a naked trustee, holding the title in trust for the rightful and equitable occupants and owners; that if he made a deed to one not such occupant and owner, a court of equity should and would be compelled to set it aside, investing the rightful claimant with the title. These " claim titles" were evi-

denced by deeds or conveyances, the grantees taking possession thereunder. If the possession was held by one, who admitted himself to be a tenant, the presumption was, that he was holding for the person having the proper evidence of title. The intent of the act of Congress (April 6, 1854), was, to provide a method of settling the actual rights and equities of the parties, and not to leave such right to the accident of possession or occupancy at the time of making the deed. (11 Iowa, 368.)

Eubank held the paper title. This is admitted. The burden of proof is, therefore, upon respondent to show that he held as his trustee or the trustee of Hall under whom he claims. And while the testimony is in some instances vague and conflicting, we think the weight of it decidedly preponderates in favor of appellant's proposition, and that the decree below should, therefore, be reversed.

The testimony of Hall and several other witnesses sufficiently establishes the fact, that he advanced the money to pay McClure for the purchase. Eubank himself does not controvert this, but by his testimony makes it quite evident that he opposed the purchase, and paid the money for Hall out of funds, realized in a store carried on, in the name of Eubank, but in the profits of which Hall had an interest. The testimony sufficiently establishes that this money was charged to Hall, and that Eubank did not regard the property as his, but as bought for Hall's benefit and paid for with his means.

It is equally clear that Hall took possession by himself or a tenant and held the same, until by force or fraud he was compelled to yield it to complainants or those under whom they claim.

Without considering, therefore, the weight to be attached to the decree in favor of McMechon and McConnell, or how far complainants are to be concluded by that adjudication, we remark, that while nothing in that proceeding is to be

construed against respondents, he, aside from that, is entitled to the property. *First*, because Hall advanced the money to purchase the same, taking the title in the name of Eubank as his trustee. *Second*, because Hall and his grantees had the possession or was entitled to the same, being ousted therefrom for a time by fraud and violence. It is also found, as before suggested, that complainants' ancestor bought with full notice of respondent's equity, or the equity of those under whom he claims, and that complainant's vendees had like notice. The decree is

Reversed.